**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

USDC EDPA
REC'D

07 SEP 30  FM 6: 19

|  |  |  |
|---|---|---|
| L.S. and C.S., as Parents and Nearest Friends of K.S., | : | |
| | : | |
| Plaintiffs, | : | |
| vs. | : | **CIVIL NO. 06-5172** |
| | : | |
| ABINGTON SCHOOL DISTRICT, | : | |
| | : | |
| Defendant. | : | |

FILED

SEP 3 0 2007

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

## MEMORANDUM OPINION AND ORDER

**RUFE, J.**                                                      September 28th, 2007

Before the Court is a Motion for Summary Judgment on the Administrative Record, brought by Plaintiff K.S., through his parents, to reverse the findings of the Special Education Appeals Panel, which ruled in favor of Defendant Abington School District. Plaintiff seeks reimbursement for an Independent Educational Evaluation ("IEE"), as well as a finding that Defendant's Reevaluation Report is inappropriate. Both the Administrative Hearing Officer and the Special Education Appeals Panel ("the Panel") found that the Report was appropriate according to the standards set forth under the Individual with Disabilities Education Improvement Act ("IDEIA")[1] as well as the Code of Federal Regulations.[2] Accordingly, the Panel denied reimbursement to the Plaintiff.

---

[1] 20 U.S.C. §§ 1401, 1412, 1414, 1415.

[2] 34 C.F.R. §§ 300.500, 502, 503.

## I. FACTUAL AND PROCEDURAL HISTORY

Seventeen-year-old K.S. attends a public school in the Abington School District.[3] He was in the eleventh grade at all times relevant to this dispute. He was first diagnosed as learning disabled by the District in the third grade, when it was found that he was struggling with math reasoning and written language, under the general categories of Other Health Impairment ("OHI") and Specific Learning Disability ("SLD") language.[4] K.S. was then home-schooled from the second through the fifth grade. When he returned to the District in 2001, he was evaluated and found to have a learning disability in math skills, with a recommendation for occupational therapy for difficulty in memory and handwriting skills.[5]

In November 2005, K.S.'s parents asked the District to re-evaluate their son, expressing their concern that his progress in school was "going downhill.[6]" Specifically, his parents felt that K.S. was having trouble with expressive language, auditory processing ability and executive functioning.[7] A reevaluation report was issued on March 6, 2006, with its conclusions drawn from existing evaluations, cognitive ability tests, school records, verbal comprehension tests, social-emotional assessments, information from the parents, teacher reports, behavior rating scales and a report from the speech and language therapist.[8]

---

[3] Pls.' Mot. for Summ. J. 1[Doc. No. 8] (The facts of this case are essentially uncontested by the parties unless noted ).

[4] Admin. R. Ex. 7, Hr'g Tr. 250-51.

[5] Admin. R. Ex. 10, Def.'s Ex. 1.

[6] Admin. R. Ex. 7, Hr'g Tr. 260.

[7] Id.

[8] Admin. R. Ex. 10, Def's Ex. 18.

The report concluded that K.S. had a "specific learning disability" and that there was a discrepancy between his achievement and ability, but it did not specify the area in which this discrepancy existed.[9]  The report later mentioned that K.S. had some weakness in the area of math fluency.[10]  The report did not identify K.S. as having Attention Deficit Hyperactive Disorder (ADHD), which was later determined.[11]  Additionally, the report made no mention, because it was not diagnosed until ten days later, that K.S. was suffering from Hashimotos Disorder, a thyroid condition that can affect auditory processing.[12]  The report did make mention of K.S.'s idiopathic thrombocytopenic purpura, a bleeding disorder of the platelets, though it made no special education recommendations based on this disease.  Notwithstanding, the District felt that the re-evaluation was sufficient with which to form an appropriate Independent Education Program (IEP) for K.S.[13]

On March 13th ,2006, K.S.'s parents wrote to the District disagreeing with numerous aspects of the re-evaluation report.[14]  Specifically, they raised concerns about the vague determination that K.S. had a "specific learning disability," without any reference as to how they reached this conclusion, nor the subject to which it referred.  The report also contained several

---

[9] Id.

[10] Id.

[11] Admin. R. Ex. 8, Hr'g Tr. 153.

[12] Id. at 343- 44.

[13] Admin R. Ex. 11, Pls.' Ex. 18 (consisting of an email from Gary Frazier, one of the school psychologists who contributed to the reevaluation).

[14] Admin. R. Ex. 11, Pls.' Ex. 12.

statements about K.S's drug use and depression, with which the parents did not agree.[15] Lastly, there was a typographical error in the report.[16] The parents March 13th letter also requested an Independent Educational Evaluation (the IEE) at public expense.

In response to the March 13th letter request, the District began a series of email communications with K.S's parents, as well as within the district that began the alleged miscommunications that would follow.[17] The emails between District personnel represented that they were aware of the IEE request, and that if they were to decline it, it should be in the form of a Notice of Recommended Education Placement ("NOREP") in writing.[18] The emails also reveal that rather than issuing this NOREP, the Director of Special Education chose to attempt resolution of the issues by way of an in-person meeting with the parents.[19] However, prior to the meeting, it was clear that the District had no intention of paying for the IEE.[20]

The parents were also clear that their intent in attending the meeting was "just to listen" to what the District had to say, and they consistently maintained their stated objections to the

---

[15] Id.

[16] Id.

[17] Plaintiff Exhibits 13-21.

[18] Plaintiff Exhibit 13; 34 C.F.R. 300.503 (a)(1)(ii) (according to the IDEIA's procedural requirements, a NOREP must be issued in writing if the District objects to the parents' request, and it must explain the bases of the referral as well).

[19] Plaintiff Exhibit 13 (The District maintains that this is their procedure for complaints, disregarding what the Code requires it do).

[20] Plaintiff Exhibit 18 (An email from Judy Bomze, district personnel, stated "this is the independent evaluation that they are going to ask us to pay for. Is there any reason in your opinion that we should pay for an IEE?" Responding to this email, the school psychologist Gary Frazier stated "no. we provided a good re-eval." This email was sent at 7:48 AM, hours prior to the meeting with K.S.'s parents).

reevaluation report.[21]  This meeting took place on March 27th, and resolved only the typographical error in the report.[22]  Despite the lack of resolution from this meeting, the District maintained that they should proceed with establishing K.S's IEP.[23]  When his parents continued to voice their objections to the report, having no reason to believe their request for an IEE would be denied, the school psychologist responded by accusing them of "confusion" and suggesting that K.S.'s problems resulted in part from his parents' "problem-solving style."[24]  Notably, the school still failed to issue a NOREP.

   While another meeting occurred on April 10th, 2006, there was still no writing from the District (in the form of a NOREP or otherwise) that they would deny the parents' request for an IEE.[25]  Prior to this meeting, the parents had, in fact, distributed questionnaires to school personnel to answer questions about K.S.'s performance in class.  These questionnaires were clearly distributed to provide information for the IEE report.[26]  The questionnaires were completed and returned to the parents prior to the April 10th meeting, with still no written District

---

[21] Plaintiff Exhibit 21.

[22] NT 65-66.

[23]  Plaintiff Exhibit 21 (putting together the IEP meeting for April 10th, 2006).

[24] Plaintiff Exhibit 21 (responding to an email from the parents stating "we do not feel the ER is adequate...we are pursuing an independent evaluation...we would like to review them [the results] with the IEP team," Gary Frazier responded that "I was under the impression as we ended our informal discussion that the majority of your issues regarding the Evaluation Report were either resolved or, at least, addressed...In another vein, in my role as psychologist, but also as a Christian brother...what has emerged is a possible connection between [K.S.]'s situation/behavior and his interpretation of parental intentions...In other words, [K.S.] may be expressing, or, at least, emulating or identifying with a problem-solving style that he has observed (or misinterpreted) in the home, manifested by ongoing confusion and debate").

[25] Special Education Due Process Appeals Review Panel Opinion p. 5.

[26] NT 291.

objection to the IEE.[27]

The IEE was completed by Dr. Margaret Kay and delivered to the District on April 26, 2006, along with a request for reimbursement.[28]  Dr. Kay performed fourteen tests on K.S. over the span of four hours and determined that he had specific learning disabilities in reading comprehension, math reasoning and written expression.[29]  He was also found to be remote, withdrawn and depressed as well as socially isolated.[30]  More importantly, Dr. Kay recommended differing methodologies for helping K.S. that could potentially contribute to his IEP.[31]

Finally, one week after submitting Dr. Kay's IEE, on May 3rd, the District issued its NOREP to the parents in writing.[32]  This, according to the parents, was the first time they were notified that the District would not pay for the IEE, and is, in fact, the only documented evidence of such in the record.[33]  Upon receipt of this news, the parents filed for a due process hearing for reimbursement, on May 16th, 2006.[34]  Thereafter, on May 24th, 2006,  the District filed for a due process hearing for a determination that the reevaluation was appropriate.[35]  This was exactly ten

---

[27] Id.

[28] Plaintiff Exhibit 26.

[29] Plaintiff Exhibit 22.

[30] Id.

[31] Id; see also Plaintiff Exhibit 21 (the parents requested that the District wait to conduct the IEP meeting until after the IEE was completed; however, the District responded with an email that failed to address the issue, and stated "let's plan to meet for an IEP meeting on Monday [April 10th, 2006]).

[32] Plaintiff Exhibit 28.

[33] NT 294.

[34] Plaintiff Exhibit 29.

[35] School District Exhibit 32.

weeks and two days after the parents' original request for an IEE at public expense pursuant to the Code.[36]

The Special Education Hearings Officer held hearings on June 23rd and June 30th, 2006 and concluded that the reevaluation was appropriate, denying reimbursement.[37]  The Hearing Officer found that the District's delay in filing for due process was harmless error, because they initiated meetings, communicated with the parents but the parents proceeded with the IEE regardless.  The Officer therefore found there was no harm was done to K.S.'s education by delaying the hearing until after the IEE was complete.[38]

Because the Hearing Officer found no procedural violation by the District, he then examined the appropriateness of the reevaluation report.  Finding that the methods for testing were "sound," and that the determination of a learning disability in math fluency had been made, the Hearing Officer concluded that there was sufficient information to form an IEP, and that the reevaluation report was appropriate according to the requirements under the IDEIA.[39]  Therefore, because the report was appropriate, the Officer found the parents had no right to reimbursement under the Code.[40]

The parents appealed the Hearing Officer's determinations to the Special Education

---

[36] 34 C.F.R. §300.502(b).

[37] Record Exhibit 6, Findings and Report of the Due Process Hearings (the hearings were held by Hearings Officer Kenneth Rose).

[38] Id. at 7-8.

[39] Id. at 8.

[40] 34 C.F.R. §300.502 (b)(3)(stating that where the evaluation is found appropriate at a due process hearing, the parents are not entitled to an IEE at public expense).

Appeals Panel, which affirmed the Officer's findings, but with a slightly different method of reasoning.[41] The panel used a four-part test to determine whether or not reimbursement was warranted, without citation to any precedent from which their methodology originated.[42] As did the Hearing Officer, the Panel afforded no import to the two months during which the District neither reimbursed the parents for the IEE nor initiated a due process hearing, as the Code of Federal Regulations requires.[43] Instead, the Panel focused on the amount of time between the receipt of the IEE and the time it took the District thereafter to initiate a due process hearing, finding that twenty-seven days was not "unnecessary delay."[44]

Finding no procedural violation by the District, the Panel went on to decide whether the evaluation report was appropriate.[45] In reviewing merely for an abuse of discretion by the Hearing Officer, the Panel found that the totality of the record did not lead it to such a conclusion.[46] Despite the stark disparities between the findings in the two professional evaluations,[47] the Panel found that the Hearing Officer's conclusion that there was sufficient

---

[41] Report Exhibit 2, Panel Decision at 8.

[42] Id. at 5.

[43] Id. at 6 (stating that there were only 27 days that elapsed between the District's receipt of the IEE and its filing for due process, beginning the time line on April 27th rather than on March 13th when the parents originally requested an IEE at public expense); see also 34 C.F.R. §300.502 (2) (stating that "If a parent requests an independent educational evaluation at public expense, the public agency must, without unnecessary delay, either (i) file a due process complaint to request a hearing to show that its evaluation is appropriate; or (ii) ensure that an independent educational evaluation is provided at public expense").

[44] Panel Decision at 7.

[45] Id.

[46] Id at 8.

[47] Referring to the IEE report by Dr. Kay and the re-evaluation report of March 6, 2006.

evidence to form an IEP from the reevaluation alone was reasonable. Therefore, the Panel deferred to his judgment.[48] Lastly, the Panel found that, because the report was appropriate, they need not review the IEE, and the parents' request for reimbursement was denied.[49]

## II. STANDARD FOR SUMMARY JUDGMENT

Civil actions brought pursuant to the IDEIA require a standard of review for summary judgment that differs from the traditional inquiry into genuine issues of material fact.[50] Rather, under IDEIA, "any action brought... (i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the *preponderance of the evidence,* shall grant such relief as the court determines is appropriate."[51] This standard is generally referred to as a "modified de novo" review of the factual findings, and affords those findings "due weight."[52] In addition, the Third Circuit has explained that the District Court is to give due weight to the appeals panel's inferences from proven facts, extrinsic evidence and findings of credibility.[53] However, the Court is not bound by the Appeals Panel's conclusions of law, and the application of legal standards used in

---

[48] Panel Decision at 8.

[49] Id.

[50] Fed. R. Civ. P. 56 (stating that "the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law").

[51] 20 U.S.C. §1415 (i)(2)(B).

[52] Lauren W. ex rel. Jean W. v. Deflamanis, 480 F.3d 259, 266 (3d Cir. 2007) (quoting S.H. v. State-Operated Sch. Dist. of Newark, 336 F.3d 260, 269 (3d Cir. 2003)).

[53] D.H. and D.H. as Parents and Nearest Friends of J.H. v. Manheim Township Sch. Dist.,No. Civ. A. 05-1113 (E.D. Pa. 2005) (citing Bd. of Educ. v. Rowley, 458 U.S. 176 (1982)).

administrative adjudications is subject to a de novo review by the District Court.[54]

## III. JURISDICTION

This civil action arises under 20 U.S.C. §1401 et seq, pursuant to the Individuals with Disabilities in Education Act.  This Court has jurisdiction based on 28 U.S.C. 1332. Under the IDEIA, parties who have satisfied the administrative remedies available in their state may file a civil cause of action in the Courts of the United States.[55]  This action results from an appeal in compliance with these requirements.

## IV. APPLICABLE LAW

Under the IDEIA, states that receive federal funding must provide every disabled student with a "free appropriate public education ("FAPE").[56] Each student is entitled to services designed to address the child's individual needs as specified in the child's Individual Education Program ("IEP").[57] The IEP must include:

> 1) a statement of the child's present levels of educational performance. . . ;
> 2) a statement of measurable annual goals, including benchmarks or short term objectives. . . ;
> 3) a statement of the special education and related services to be provided to the child;
> 4) an explanation of the extent, if any, to which the child will not participate with nondisabled children [in activities]. . . ;

---

[54] S.H. v. State-Operated Sch. Dist. Of City of Newark, 336 F.3d 260, 271 (3d Cir. 2003); accord L.E. et al. v. Ramsey Board of Educ., 435 F.3d 384. 389 (3d Cir. 2006).

[55] 20 U.S. C. §1415(g) (defining the right of the aggrieved party to the due process hearing to file an appeal with the State educational agency to conduct an impartial review) see also 20 U.S.C. §1415 (i)(2)(A) (defining the right to bring a civil action in any competent State court or in a district court of the United States without regard to the amount in controversy).

[56] 20 U.S.C. §1412 (a)(1)(A).

[57] Id. at §1414 (d).

5) a statement of how the child's parents will be regularly informed . . . ;
6) a statement of how the child's progress toward the annual goals will be measured.[58]

The IEP is determined by a child's parents/guardian in conjunction with the IEP Team, which consists of at least one classroom teacher, at least one special education teacher, a representative of the educational agency who is qualified and knowledgeable about the curriculum, and an individual who can interpret the instructional implications of evaluation results.[59]  The Team is additionally required under the IDEIA to evaluate the child continually throughout his education. The Act requires that the evaluation use assessment tools "to gather relevant information. . . that may assist in determining. . . whether the child is a child with a disability; and the content of the child's individualized education program."[60]  Notwithstanding this section, the 2005 amendments to the IDEIA added that when making the determination of the child's specific learning disability, the Team has no obligation to take into consideration discrepancies between achievement and ability in several specific areas, including oral expression, written expression, basic reading, mathematical calculation, or mathematical reasoning.[61]

Any time the Team decides to change the child's placement, identification, or evaluation, they must provide adequate notice in writing  to the parents describing why the change is

---

[58] Id. at §1414 (d)(1)(A)(i-vi).

[59] Id. at §1414 (d)(1)(B).

[60] Id. at §1414(b)(2).

[61] Id. at §1414(b)(6).

-11-

necessary or appropriate.[62]  This notice is generally referred to as the Notice of Recommended Education Placement ("NOREP").

If the child's parents request a reevaluation, the IDEIA requires that the school district or other public agency comply.[63]  Once this reevaluation is complete, the parents may object to all or part of the findings, and may request that an Independent Educational Evaluation be conducted at public expense.[64]  The Code of Federal Regulations specifies the procedure that the District must comply with in order to fulfill this obligation.  The public agency (the District here) "must, without unnecessary delay, either (i) File a due process complaint to request a hearing to show that its evaluation is appropriate; or (ii) Ensure that an independent educational evaluation is provided at public expense."[65]  The IDEIA further provides that if the District so chooses, it has the option of mediation with the parents, if they parents so consent.

Most noteworthy, 2005 amendments to the IDEIA add that after a complaint has been given to the District regarding an evaluation, the District must meet with the parents to attempt a resolution of the matter before initiating the due process hearing.  This is called the "resolution session" and must be conducted within fifteen days of a complaint from the parents under 20 U.S.C. 1415 (b)(6).  Section 1415 (f)(1)(B) further states:

> "Prior to the opportunity for an impartial due process hearing... the local educational agency shall convene a meeting with the parents and the relevant member or members of the IEP Team. . . (I) within 15 days of receiving notice of

---

[62] Id. at §1415 ((b)(3).

[63] Id. at 1414 (a)(2).

[64] Code of Federal Regulations, 32 C.F.R. §300.502 (b)(1) (meaning that the public agency either pays for the full cost of the evaluation or ensures that the evaluation is otherwise provided at no cost to the parent).

[65] Id. at 300.502 (b)(2).

the parents' complaint; . . . (IV) where the parents of the child discuss their
complaint, and the facts that form the basis of the complaint, and the local
educational agency is provided the opportunity to resolve the complaint."
Lastly, Section 1415(f)(1)(B)(ii) states that "if the local agency has not resolved the complaint to

the satisfaction of the parents within 30 days of the receipt of the complaint, the due process

hearing may occur, and all of the applicable timelines for a due process hearing under this

subchapter shall commence." That is to say, that the time line for unnecessary delay in filing for

due process does not begin until 30 days after the initial complaint is received by the District.

With respect to claims of procedural violations of the IDEIA at the hearing, the Hearing

Officer may find that a violation occurred only where the result prevents the child from receiving

a FAPE.[66] There are only three ways to find a procedural violation of FAPE; if the violation: "(I)

impeded the child's right to a free appropriate public education; (II) significantly impeded the

parents' opportunity to participate in the decisionmaking process. . . ; or (III) caused a

deprivation of educational benefits."[67]

## V. DISCUSSION

The IDEIA raises as many substantive requirements as it does procedural ones, and each

must be examined to determine whether a violation of the Act has occurred.[68] Here, the parents'

motion for summary judgment raises three issues: two regarding procedure and one of substance.

---

[66] 20 U.S.C. 1415(f)(3)(E).

[67] Id.

[68] See Schaffer v. Weast, 546 U.S. 49, 60 (2005) (stating that the IDEIA was intended by Congress to place
as much emphasis on compliance with procedures as it did upon the substance of the IEP, giving the parents a large
measure of participation in both) (quoting Board of Ed. of Hendtrick Hudson Central School Dist., Westchester Cty.
v. Rowley, 458 U.S. 176, 183 (1982)).

First, the parents argue that the School District failed to issue a NOREP to the proposed IEE, giving the parents the impression that it would reimburse the cost of the evaluation. Second, the parents assert that the District failed to act on the IEE request "without unnecessary delay" when it waited ten weeks to either object in writing or alternatively to initiate a due process hearing as required by the Code. Lastly, the parents argue that the reevaluation completed by the District in March of 2006 was "inappropriate" as a basis for determining the best IEP for their son.

### A. Failure to Provide Written Notice of Objection to IEE

The parents' first assertion is that the District failed to provide timely written notice of their intent not to change their evaluation and, accordingly, not to pay for the parents' requested IEE. The parents argue that, as a matter of equity, they should be reimbursed for the cost of the IEE based on the District's procedural violation. They posit that they reasonably relied on the District's failure to respond definitively and in writing, giving them cause to believe they would be reimbursed. The District argues that it was still considering the parents' request when the parents initially hired Dr. Kay to perform the IEE. This scenario, it urges, creates a race between the District and the parents to reject the request before an independent evaluator can be hired. The District maintains that it acted within a reasonable amount of time of the request by holding meetings and later issuing a NOREP on May 3rd.

The Code requires notice as one of alternative courses of action that the District may adopt in order to avoid a procedural violation of the Act. [69] The first route is to provide notice of

---

[69] 34 C.F.R. §300.502(b)(2).

the intent not to change its evaluation, refuse payment of an IEE, and initiate a due process hearing; the other route is to pay for the IEE. According to the Code, whichever route the District elects must be executed within a reasonable time, without unnecessary delay.[70]

While the Act and the Code are silent on what defines "reasonable time," case law suggests that a case-by-case analysis is necessary, in order to fix an "appropriate" remedy and is left to the discretion of the Court.[71] While this Court is to adopt the factual findings of the Panel as "per se correct," the interpretation of what is reasonable time under the Code is a conclusion as a matter of law.[72] The question here presented is whether the District, knowing what it knew about the parents' intentions to obtain an IEE, failed to comply with its obligation under the Code to issue a NOREP to the parents within a reasonable time of their decision not to reimburse them.

A review of the record shows that the District, specifically for the Director of Special Education, knew of its obligation to issue a timely NOREP.[73] In an email dated March 16th, the Director wrote to his staff, "if [the reevaluation is appropriate], we will issue a NOREP declining the request for an independent evaluation."[74] This was just three days after the parents requested the IEE.

Not only was the District aware of its obligation to issue a letter of NOREP, it was also aware that the parents were seeking an independent evaluation and would be asking for

---

[70]  Id. at §300.503 (a).

[71]  Sch. Comm. of the Town of Burlington, Mass, et al., v. Dept. of Educ. Of the Comm. of Mass, et al., 471 U.S. 359, 369 (1985).

[72]  Manheim, No. Civ. A. 05-1113 at *6.

[73]  Plaintiff Exhibit 13.

[74]  Id.

reimbursement.[75]  In an email from District staff on March 24th, 2006, the District stated "this is the independent evaluation that they are going to ask us to pay for. Is there any reason in our opinion that we should pay for an IEE?"[76]  This email was directed to the school psychologist, who responded "No. We provided a good re-eval."[77]  The evidence is clear that the District to reject the parents' request for reimbursement far earlier than it documented in writing to the parents.

The District argues that it responded to the parents within a reasonable time because it conducted a meeting with the parents to discuss the reevaluation report.[78]  It further asserts that at no time during that meeting did the District agree to pay for the IEE, and that therefore the parents should not have assumed their IEE would be reimbursed.[79]  However, under the plain meaning of the Act and the Code, it is the District's obligation to either pay for the IEE, or to initiate a due process hearing.[80]  The law requires that the District issue a rejection in writing, and only a rejection, as opposed to affirmative permission.[81]  If the District approves payment for the IEE, they need not issue this decision in writing.  The default position without such writing, therefore, is that the District is obligated, if not willing to pay for the IEE.

---

[75] Plaintiff Exhibit 18.

[76] Id.

[77] Id.

[78] Def. Abington Sch. Dist. Brief in Response to Pl. Motion for Summary Judg. at 9.

[79] Id at 5.

[80] 34 C.F.R. 300.502(b)(2).

[81] Id. at §300.503 (a)(1)(ii).

The District does, however, have a reasonable time within which to issue a NOREP.[82] The accompanying obligation on the parents, then, is to give the District a reasonable time in which to process their request.  While the parents have no affirmative duty to act or withhold from acting, the law is not read in a way that would mandate any and all requests for IEEs to be rubber-stamped and paid for by the district immediately upon request.  Here, the parents hired Dr. Kay almost immediately following their request to the District; the question remains whether the parents thereby left the District a reasonable amount of time to respond to their request for reimbursement.[83]

Based on the District's knowledge, a NOREP could have been issued in writing and sent to the parents long before May 3rd.  The District told the parents at the April 10th meeting that it was rejecting their request.[84]  Neither party claims that this communication was in writing, as required.  This fact is not irrelevant, however, because it significantly weakens the parents argument that they had a reasonable belief the District would pay for their IEE.  On equitable grounds alone, waiting less than one month to give at least some warning does not blatantly violate the reasonable time requirement.

While this court has sufficient basis to rule that the seven weeks it took to issue the NOREP is unreasonable,  the Act also requires that in order to violate the procedural requirements under the IDEIA, the violation must have a negative impact on the child's right to a

---

[82] Id. at 300.503(a).

[83] NT 328 (stating that the parents hired Dr. Kay sometime between March 13th and March 22nd of 2006).

[84] Due Process Hearing Report at 5 (finding that the District communicated orally to the parents that they had no intention of paying for the IEE).

FAPE.[85]  Because the parents fail to claim any violation impeded K.S.'s right to a FAPE, nor

impeded their own right to participate in his IEP, the only possibility that can be asserted under

the Act is that this violation caused a deprivation of K.S.'s educational benefits.  This assertion is

meaningless without an analysis of the appropriateness of the reevaluation report.  Therefore,

regardless of an apparent procedural violation, this Court cannot award reimbursement on

equitable grounds unless we also find that the reevaluation report was inappropriate according to

the plain meaning of the Act.


*B. Unnecessary Delay*

The parents' second procedural claim is closely related to their first, in that it is related to

the  subsequent action to issuing the NOREP.[86]  The parents assert that the District acted

unreasonably by unnecessarily delaying the initiation of a due process hearing under the IDEIA.

Where the District does not pay for the IEE, it must, in the alternative, initiate a due process

hearing to determine whether its evaluation report is appropriate.[87]  The parents argue that the

District waited ten weeks from the time of their request for an IEE to the time when the District

filed for due process.  The District responds that this time period does not amount to unnecessary

delay because in those same ten weeks, it made attempts to mediate the dispute prior to resorting

to a due process hearing.[88]  As this issue also involves a matter of procedure, it will similarly be

---

[85] 20 U.S.C. §1415 (f)(3)(E)(ii).

[86] 34 C.F.R. §300.502(b) (reading that if the District refuses to pay for an IEE, issuing a NOREP stating such, they must then initiate a due process hearing).

[87] Id.

[88] Def. Brief in Response to Pl.'s Motion, at 14.

considered with respect to the impact the potential violation had on K.S.'s right to a FAPE, the parents'

## 1. The Resolution Meeting

One key issue of contention in the instant case is when the time line begins for purposes of unnecessary delay in filing for a due process hearing under the Act. The District argues that the time should begin when the IEE reimbursement is rejected (when the NOREP is issued).[89] Alternatively, the District argues that this Court should defer to the findings of the Appeals Panel, which concluded that the time line should start when the IEE report is received by the District from the parents.[90] The Panel found that the District received the parents IEE on April 27th, 2006, and therefore, only 27 calendar days elapsed before the District initiated a due process hearing.[91] The parents argue that, based on the language of the Code, the time line should begin at the time of the parents' request for an IEE.[92]

The resolution of this issue is clear, based on the 2005 amendments to the IDEIA. While neither party addresses these new provisions, the Court finds them helpful. In 2005, Congress

---

[89] Id. at 6.

[90] Panel Decision, p. 6.

[91] Id.

[92] Pl. Brief in support of Motion for Summary Judgment, at 6 (quoting the Code, 34 C.F.R. §300.502(b), which states that "If a parent requests an [IEE] at public expense, the public agency must, without unnecessary delay. . . ").

amended the Act to include a provision entitled "Resolution Session."[93] This session is to occur within fifteen days of the parents' complaint to the evaluation or reevaluation.[94] The section further provides that in the event the objections are not resolved within thirty days of their complaint, "all applicable time lines for a due process hearing under this subchapter shall commence."[95] Therefore, the Court interprets these provisions to give the District thirty days to attempt to resolve the objections before the "unnecessary delay" time frame begins. Neither the District's interpretation of the receipt of the IEE report nor the parents' interpretation of the date of the request are correct.

In the present case, the objections were made to the School District on March 13th, 2006.[96] The District's request for a due process hearing was May 25th, 2006. It is this six week time period that the Court examines for a possible violation of unnecessary delay.

## 2. Six Weeks is Not Unnecessary Delay

The District explains that, because it was actively attempting to resolve the disputes with the parents throughout the entire period, any delay was necessary. The District further argues that, for at least some time after the March 27th meeting, it was under the impression that the issues had been resolved. It is the District's opinion that the IEP progressed, with or without the

---

[93] 20 U.S.C. §1415(f)(B) (the statute refers to a "complaint," which includes objections raised to evaluations, reevaluations or any part of the identification and evaluation process. As it applies here, this term refers to the parents' objections to the reevaluation report).

[94] Id. at §1415(f)(B)(i)(I).

[95] Id. at §1415(f)(B)(ii).

[96] Due Process Hearing Report, at 4.

IEE, and an appropriate program was implemented.  Assuming, arguendo, that this was the case, no resulting harm to K.S.'s right to a FAPE occurred, and the delay was harmless error.

Case law varies greatly in interpreting the term "unnecessary delay." The Third Circuit has found that two years, even one year, is unnecessary delay in initiating a procedural grievance under the IDEIA.[97]  One Court in the Eastern District of Pennsylvania has found that eight months amounts to unnecessary delay in J.H. v. Manheim Township School District.[98]  The District here cites to the Third Circuit opinion in Holmes v. Millcreek Township School District, which found that three months was not unnecessary delay.[99]  While the parents' argument that this six week period constituted a per se procedural violation of the IDEIA, the time line alone cannot satisfy the considerations necessary to determine unnecessary delay under the Act.  As in case decisions, this Court finds it mandatory to assess the substantive events that occurred within the relevant time between the parents' objecting to the evaluation and the District initiating the due process hearing.

The IDEIA includes a detailed provision for mediation between objecting parents and the School District.[100]  In addition, the 2005 amendments add a provision for a resolution session

---

[97] Bernardsvilee Bd. of Educ. v. J.H., 42 F.3d 149, 158 (3d Cir. 1994); accord Warren G. v Cumberland County Sch. Dist., 190 F.3d 80 (3d Cir. 1999) (finding that two years was unnecessary delay).

[98] D.H. and D.H. as Parents and Nearest Friends of J.H. v. Manheim Township Sch. Dist., No.Civ. A. 05-1113 (E.D. Pa. Nov. 29, 2005) (finding that the school district acted with unnecessary delay when it waited eight months to object to the parents IEE).

[99] R.H. Holmes by parents E.H. and D.H. v. Millcreek Township Sch. Dist., 205 F.3d 583, 590 (3d Cir. 2000) (denying parents reimbursement in a due process hearing initiated three months after the parents' complaint was filed).

[100] 20 U.S. C. §1415(e).

prior to filing for a due process hearing.[101]  It is apparent that the legislature intended a

cooperative process in creating an IEP that would best provide a FAPE for children under the

IDEIA.  The District in the instant case attempted on numerous occasions to mediate with the

parents, albeit not pursuant to the precise requirements under the Act.  The parents continually

refused to mediate or compromise with the District, cancelling one meeting and attending only

one additional meeting, but with the express intent "only to listen."  They asked the District to

delay the IEP meeting until their IEE was complete, though they did attend the IEP meeting on

April 10th.  While the District does not rest its argument on the resolution session provision in the

IDEIA, they appear to be in compliance, at least until April 8th, when the District realized that the

parents' position was firm.

On April 8th, the parents asked the District to postpone the IEP until their IEE was

complete.[102]  It received an email from the parents on April 8th stating "I'm wondering why we

can't postpone the IEP until the first week in May, when we get back the IE [sic] report. . .We

would be satisfied with that, for now."[103]  Nonetheless, the parents attended the IEP meeting on

April 10th, having previously received the completed IEE report on April 6th.[104]  Once the District

received the parents' IEE on April 26th with another accompanying letter requesting

reimbursement, the District promptly issued the NOREP on May 3rd.[105]  Shortly after the NOREP

---

[101] Id. at 1415(f)(1)(B) (2004 Acts, House Conf. Rep. No. 108-779, Pub.L. 108-446 § 302(a) Title I, effective July 1, 2005).

[102] Plaintiff Exhibit 21.

[103] Id.

[104] IEE Report, Plaintiff Exhibit 22.

[105] Plaintiff Exhibit 28.

was issued, the parents filed for a due process hearing, to which the District responded with a request of its own.[106]

The Court finds that the six week time period was largely comprised of the District's efforts to resolve the dispute and move the process along. The District's initiation of a due process hearing was well within the judicially created window. The District attempted to resolve the disagreements in several meetings, as the Act mandates, issuing a NOREP within several weeks of ascertaining that the matter would not be resolved while the IEE was being completed. This does not amount to a per se violation of the procedural requirement for the District to act without unnecessary delay.

Even if this Court were to conclude that a procedural violation had occurred, that violation must also impede K.S.'s right to a FAPE.[107] The plaintiffs do not argue that K.S.'s right to a FAPE was affected by any delay. They conducted the IEE regardless, and had the choice to use it in completing K.S.'s IEP.[108] Without a clear effect on K.S.'s FAPE, this Court cannot find that any procedural violation has occurred. The only apparent harm resulting from the alleged procedural violation with respect to unnecessary delay was the cost to the parents in obtaining the IEE report. This alone does not have an effect on K.S.'s FAPE, and with an obvious showing of the parents' involvement in the process, this Court cannot find error in the

---

[106] Plaintiff Exhibits 29 and 30 (Plaintiffs filed their request for a due process hearing on May 16th, 2006 and the District filed its request on May 25th, 2006).

[107] 20 U.S.C. §1415(f)(3)(E)(ii).

[108] The IEE was delivered to the parents and the District on April 6th, 2006, making it available for the IEP meetings, which commenced no sooner than April 10th, 1006.

Hearing Offcier's conclusion that this was harmless error.[109]

It should be noted, however, that the Act compels open, cooperative communication between parents and the District.[110] Although a per se violation did not occur in the instant case, the email evidence suggests a marked level of distrust and miscommunication on the part of both parties to this litigation. While the Court concludes no legal violation occurred, public education in the District would likely benefit from more diligent, prompt and open communications, as the legislature intended.

*C. District's Reevaluation*

Based on the Court's finding that no apparent or actual delay, and therefore no procedural violation under the IDEIA, the discussion can terminate here. However, in a case where **a** violation of a procedural right, however minimal, can in any way impact on a child's educational benefits, it is the obligation of the Court to fully evaluate the appropriateness of the District's reevaluation to ultimately determine whether *any* violation, procedural or substantive, occurred.

**1. The Law**

If it is determined at the due process hearing that the District's reevaluation report is appropriate, parents are still entitled to request an IEE, though not at District expense.[111] The parents' last assertion is that the Hearing Officer erred in finding that the District's reevaluation

---

[109] Due Process Hearing Report at 7.

[110] See Schaffer, 546 U.S. at 60 (suggesting that the IDEIA works best when parents and schools work together both procedurally and substantively to form the best IEP for children).

[111] 34 C.F.R. 300.502(3).

report was appropriate.[112]  The parents object to the following aspects of the reevaluation:

>(1) the evaluation failed to identify [a] specific learning disability;
>(2) failed to include data to support the identification of the disability, and;
>(3) failed to discuss the educational needs related to [K.S.'s] blood disorder.[113]

In line with current law, the District argues that this Court should defer to the factual findings of the Hearing Officer in finding that the reevaluation was appropriate.[114]  It further refers to the standard for inappropriateness, that requires more than a mere disagreement on the part of the parents.  Lastly, the District maintains that its evaluation was sufficient to provide the information necessary for K.S.'s IEP.[115]

The IDEIA speaks only to the reliable methodology and personnel with which the District must conduct its evaluations.[116]  It does not, as the parents assert, require that firm conclusions nor specific educational programs be detailed in the report, except to denote if a child does or does not have a specific learning disability.[117]  The Act states that the District shall use a variety of assessment tools to gather relevant. . . information. . . that may assist in determining whether the child is a child with a disability."[118]  This provision suggests that the evaluation need only be conducted in a variety of ways, so that the information obtained may assist the IEP Team in

---

[112] Pl. Brief in Support of Motion, at 13.

[113] Id. at 7.

[114] Def. Brief in Response to Pl.'s Motion, at 20.

[115] Id. at 21.

[116] 20 U.S.C. § 1414(b)(2).

[117] Id. at (b)(4).

[118] Id. at (b)(2).

forming conclusions and determination for the child's education placement.

The Third Circuit has spoken to the appropriateness of evaluation reports in <u>Warren G,</u> in which the Court affirmed the District Court's finding that the School District's evaluation was inappropriate.[119] The District Court found that it was the school's burden to defend its evaluation report as appropriate, and that it failed to meet this burden.[120] The school failed to present sufficient evidence to support the methodology used in forming its evaluation. The primary deficiency found by the <u>Warren G.</u> Court was that the evaluation failed to uncover the specific areas of the children's learning disabilities.[121] The deficiencies were later determined by the parents' IEE, providing further support for the District Court's findings.[122]

## 2. The Facts

The parents first take issue with the failure of the reevaluation report to specify K.S.'s specific learning disability.[123] They further object to the lack of suggested measures the District could take in helping K.S. with his learning needs. However, there is nothing in the Act, nor the Code that suggests the evaluation reports require conclusions other than whether the child has a specific learning disability.[124] The District's report does so, and further suggests that K.S.'s problems were in math fluency, with a suggested automaticity with basic math calculation

---

[119] <u>Warren G.</u>, 190 F.3d at 87.

[120] <u>Id</u>.

[121] <u>Id</u>.

[122] <u>Id</u>. (finding the evaluation even more inappropriate by comparison to the IEE, that determined four areas of learning disabilities that the school district failed to discover).

[123] Pl. Brief in Support of Motion, at 14.

[124] 20 U.S.C. §1414 (b)(4).

skills.[125]  In addition, the evaluators clearly tested K.S. in all areas, including every area in which the parents raised concerns.[126] While it did not draw the same conclusions as the parents regarding these "problem areas," the evaluation clearly tested them and found that no deficiency amounted to a specific learning disability other than in math fluency.  This is all the Act requires of the District.

The Act requires only that the proper assessment tools and qualified individuals conduct the evaluation.[127]  Here, the evaluation was conducted by Gary Frazier, a certified school psychologist, who met with K.S. on six separate occasions to perform testing.[128]  The District used a variety of tests and assessment tools, including existing evaluation, cognitive ability tests, school records, verbal comprehension tests, perceptual reasoning tests, working memory tests, processing speed tests, social-emotional assessments, information from the parents, teacher reports, behavior rating scales completed by teaches and a report from the speech therapist.[129]

The parents rely on Warren G in support of their argument that the evaluation was inappropriate for failing to specify K.S.'s specific learning disability.[130] While Warren G  may apply to the issue presented here,[131] it is distinguishable in its facts.   In Warren G, the District

---

[125] Defense Exhibit 18.

[126] Id.

[127] 20 U.S.C.§ 1414(b)(2).

[128] Due Process Hearing, at 3.

[129] Id.

[130] Pl. Brief in Support of Motion, at 14.

[131] The issue presented both here and in Warren G is whether parents are entitled to reimbursement for an IEE based on a claim that the District's evaluation was inappropriate.

failed to defend its evaluation at the due process hearing.[132] The District could not show that it had tested in all areas of suspected learning disabilities.[133] The IEE uncovered disabilities that the evaluation hadn't even considered.[134] Here, however, the District adequately defended its evaluation at the due process hearing, showing that it tested in all areas, over a period of six days.[135] While the report does not state that the specific learning disability was in math within the same sentence, the report does state that K.S.'s problem area was in math.[136] This is not a failure to uncover a specific learning disability that can be compared to that in Warren G.

The parents here cannot simply argue that the evaluation was inappropriate because they disagree with its findings. The key is in the methodology. The conclusions, or lack thereof, cannot be inadequate unless the methodology is inadequate, because that is the only provision in the law. Here, the District has presented an abundance of evidence to show that its evaluation methodology was adequate, the Hearing Officer agreed with this evidence, and the panel affirmed.[137] This Court finds no error in these previous analyses.

The parents second objection to the report is that it fails to address any measures relating to K.S.'s blood disorder.[138] However, K.S.'s blood disorder is a physical condition, not a

---

[132] Warren G., 190 F.3d at 87.

[133] Id.

[134] Id.

[135] Due Process Hearing Report at 3.

[136] Reevaluation Report, Defense Exhibit 18.

[137] Hearing Report at 8.

[138] Pl. Brief in Support of Motion, at 15.

psychological area of learning deficiency.  The IEP is designed to address only the child's needs

that result from a [specific learning disability] recognized by the IDEIA.[139]  In other words,

childhood disorders and physical deficiencies that are not a part of a specific *learning* disability

are irrelevant for determining the course of the child's education. The IEP need not address

problems unrelated to learning disabilities.  While the Court sympathizes with any troubles K.S.

may experience as a result of his blood disorder,  this objection does not impact the Court's

findings based on the law relating to the IDEIA.

 While the District's report could have included more detail, it was not required by law to

be so.  It addressed K.S.'s deficiency between ability and achievement in math skills, identified

that he had a specific learning disability and used a number of reliable tests in so finding.[140]  This

is more than sufficient information from which the IEP Team could create an adequate IEP for

K.S.


## CONCLUSION

 This Court, therefore, finds that the Distric's failure to issue a NOREP for seven weeks

was harmless error, as any delay had no impact on K.S.'s right to a FAPE.  The court further

finds that the six week interval in which the District attempted to resolve the dispute with K.S.'s

parents was a necessary and potentially helpful delay, supported by the procedures and intent of

the Individuals with Disabilities in Education Act.  Finally, the Court finds that there is no clear

---

[139] 20 U.S.C. §1401(30) (defining specific learning disability as "a disorder in 1 or more of the basic psychological processes involved in understanding or in using language, spoken or written, which disorder may manifest itself in the imperfect ability to listen, think, speak, read, write, spell or do mathematical calculations").

[140] Reevaluation Report, Defense Exhibit 18.

error in the Panel's affirmation of the Hearing Officer's decisions regarding the appropriateness of the reevaluation report.  Affording those decisions due weight, this court here affirms those findings.  The Court denies plaintiff's motion for summary judgment and awards no reimbursement of costs for the IEE to the parents.

**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| L.S. and C.S., as Parents and Nearest Friends of K.S., | : |
| | : |
| Plaintiffs, | : |
| vs. | :   **CIVIL NO. 06-5172** : |
| ABINGTON SCHOOL DISTRICT, | : |
| | : |
| Defendant. | : |

## ORDER

**AND NOW**, this 30th day of September, 2007, upon consideration of Plaintiffs' Motion for Summary Judgment [Docket # 8], Defendant's Response, [Docket # 10], Plaintiffs' Reply [Docket # 12], the parties' Memoranda of law, a review of the administrative record, and in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED** and **DIRECTED** as follows:

1. The administrative procedures below are **AFFIRMED**;

2. Plaintiffs' request for an Independent Educational Evaluation at public expense is **DENIED**; and

3. In all other respects, Plaintiffs' Motion for Summary Judgment is **DENIED**.

The Clerk of Court is **DIRECTED** to **CLOSE** this case.

**BY THE COURT:**

CYNTHIA M. RUFE, J.