## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| L.S. and C.S., as Parents and Nearest Friends of K.S., | : : : | |
| **Plaintiffs,** | : : | |
| vs. | : : | CIVIL NO. 06-5172 |
| ABINGTON SCHOOL DISTRICT, | : : | |
| **Defendant.** | : : : | |

## MEMORANDUM OPINION AND ORDER

**RUFE, J.**                                                                                    **April 9, 2008**

Before the Court is Plaintiffs' Motion for Reconsideration of the Court's Memorandum Opinion and Order of September 30, 2007, denying their request for payment of an Independent Education Evaluation ("IEE") and holding that the Abington School District ("the District's") reevaluation report was appropriate.[1]  After consideration of Plaintiffs' Motion for Reconsideration, Defendant's Response in Opposition, and this Court's Memorandum Opinion and Order denying Plaintiffs' Motion for Summary Judgment, the Court will deny Plaintiffs' Motion for Reconsideration.

## I. FACTS

The Court provided a thorough recitation of the facts in its Memorandum Opinion and Order of September 20, 2007.  Thus, we incorporate the following Factual and Procedural History in its entirety:[2]

---

[1] Mem. Op. and Order [Doc. No. 13].

[2] Id. at 2-9.

Seventeen-year-old K.S. attends a public school in the Abington School District.[3] He was in the eleventh grade at all times relevant to this dispute.  He was first diagnosed as learning disabled by the District in the third grade, when it was found that he was struggling with math reasoning and written language, under the general categories of Other Health Impairment ("OHI") and Specific Learning Disability ("SLD") language.[4]  K.S. was then home-schooled from the second through the fifth grade.  When he returned to the District in 2001, he was evaluated and found to have a learning disability in math skills, with a recommendation for occupational therapy for difficulty in memory and handwriting skills.[5]

In November 2005, K.S.'s parents asked the District to re-evaluate their son, expressing their concern that his progress in school was "going downhill."[6] Specifically, his parents felt that K.S. was having trouble with expressive language, auditory processing ability and executive functioning.[7]  A reevaluation report was issued on March 6, 2006, with its conclusions drawn from existing evaluations, cognitive ability tests, school records, verbal comprehension tests, social-emotional assessments, information from the parents, teacher reports, behavior rating scales and a report from the speech and language therapist.[8]

The report concluded that K.S. had a "specific learning disability" and that there was a discrepancy between his achievement and ability, but it did not specify the area in which this discrepancy existed.[9]  The report later mentioned that K.S. had some weakness in the area of math fluency.[10]  The report did not identify K.S. as having Attention Deficit Hyperactive Disorder (ADHD), which was later determined.[11]  Additionally, the report made no mention, because it was not diagnosed until ten days later, that K.S. was suffering from Hashimotos Disorder,

---

[3] Pls.' Mot. for Summ. J. 1[Doc. No. 8] (The facts of this case are essentially uncontested by the parties unless noted).

[4] Admin. R. Ex. 7, Hr'g Tr. 250-51.

[5] Admin. R. Ex. 10, Def.'s Ex. 1.

[6] Admin. R. Ex. 7, Hr'g Tr. 260.

[7] Id.

[8] Admin. R. Ex. 10, Def's Ex. 18.

[9] Id.

[10] Id.

[11] Admin. R. Ex. 8, Hr'g Tr. 153.

a thyroid condition that can affect auditory processing.[12]  The report did make mention of K.S.'s idiopathic thrombocytopenic purpura, a bleeding disorder of the platelets, though it made no special education recommendations based on this disease.  Notwithstanding, the District felt that the re-evaluation was sufficient with which to form an appropriate Independent Education Program (IEP) for K.S.[13]

On March 13th, 2006, K.S.'s parents wrote to the District disagreeing with numerous aspects of the re-evaluation report.[14]  Specifically, they raised concerns about the vague determination that K.S. had a "specific learning disability," without any reference as to how they reached this conclusion, nor the subject to which it referred.  The report also contained several statements about K.S's drug use and depression, with which the parents did not agree.[15]  Lastly, there was a typographical error in the report.[16]  The parents' March 13th letter also requested an Independent Educational Evaluation (IEE) at public expense.

In response to the March 13th letter request, the District began a series of email communications with K.S's parents, as well as within the district, that began the alleged miscommunications that would follow.[17]  The emails between District personnel represented that they were aware of the IEE request, and that if they were to decline it, it should be in the form of a Notice of Recommended Education Placement ("NOREP") in writing.[18]  The emails also reveal that rather than issuing this NOREP, the Director of Special Education chose to attempt resolution of the issues by way of an in-person meeting with the parents.[19]  However, prior to the meeting, it was clear that the District had no intention of

---

[12] Id. at 343- 44.

[13]  Admin R. Ex. 11, Pls.' Ex. 18 (consisting of an email from Gary Frazier, one of the school psychologists who contributed to the reevaluation).

[14]  Admin. R. Ex. 11, Pls.' Ex. 12.

[15] Id.

[16] Id.

[17]  Plaintiff Exhibits 13-21.

[18]  Plaintiff Exhibit 13; 34 C.F.R. 300.503 (a)(1)(ii) (according to the IDEIA's procedural requirements, a NOREP must be issued in writing if the District objects to the parents' request, and it must explain the bases of the referral as well).

[19]  Plaintiff Exhibit 13 (The District maintains that this is their procedure for complaints, disregarding what the Code requires it do).

paying for the IEE.[20]

        The parents were also clear that their intent in attending the meeting was "just to listen" to what the District had to say, and they consistently maintained their stated objections to the reevaluation report.[21]  This meeting took place on March 27th, and resolved only the typographical error in the report.[22]  Despite the lack of resolution from this meeting, the District maintained that they should proceed with establishing K.S's IEP.[23]  When his parents continued to voice their objections to the report, having no reason to believe their request for an IEE would be denied, the school psychologist responded by accusing them of "confusion" and suggesting that K.S.'s problems resulted in part from his parents' "problem-solving style."[24] Notably, the school still failed to issue a NOREP.

        While another meeting occurred on April 10th, 2006, there was still no writing from the District (in the form of a NOREP or otherwise) that it would deny the parents' request for an IEE.[25]  Prior to this meeting, the parents had, in fact, distributed questionnaires to school personnel to answer questions about K.S.'s performance in class.  These questionnaires were clearly distributed to provide information for the IEE report.[26]  The questionnaires were completed and returned to the parents prior to the April 10th meeting, with still no written District objection to the IEE.[27]

        The IEE was completed by Dr. Margaret Kay and delivered to the District

---

[20] Plaintiff Exhibit 18 (An email from Judy Bomze, district personnel, stated "this is the independent evaluation that they are going to ask us to pay for. Is there any reason in your opinion that we should pay for an IEE?" Responding to this email, the school psychologist Gary Frazier stated "no. we provided a good re-eval." This email was sent at 7:48 AM, hours prior to the meeting with K.S.'s parents).

[21] Plaintiff Exhibit 21.

[22] NT 65-66.

[23]  Plaintiff Exhibit 21 (putting together the IEP meeting for April 10th, 2006).

[24] Plaintiff Exhibit 21 (responding to an email from the parents stating "we do not feel the ER is adequate...we are pursuing an independent evaluation...we would like to review them [the results] with the IEP team," Gary Frazier responded that "I was under the impression as we ended our informal discussion that the majority of your issues regarding the Evaluation Report were either resolved or, at least, addressed...In another vein, in my role as psychologist, but also as a Christian brother...what has emerged is a possible connection between [K.S.]'s situation/behavior and his interpretation of parental intentions...In other words, [K.S.] may be expressing, or, at least, emulating or identifying with a problem-solving style that he has observed (or misinterpreted) in the home, manifested by ongoing confusion and debate").

[25] Special Education Due Process Appeals Review Panel Opinion p. 5.

[26] NT 291.

[27] Id.

-4-

on April 26, 2006, along with a request for reimbursement.[28]  Dr. Kay performed fourteen tests on K.S. over the span of four hours and determined that he had specific learning disabilities in reading comprehension, math reasoning and written expression.[29]  He was also found to be remote, withdrawn and depressed as well as socially isolated.[30]  More importantly, Dr. Kay recommended differing methodologies for helping K.S. that could potentially contribute to his IEP.[31]

Finally, one week after submitting Dr. Kay's IEE, on May 3rd, the District issued its NOREP to the parents in writing.[32]  This, according to the parents, was the first time they were notified that the District would not pay for the IEE, and is, in fact, the only documented evidence of such in the record.[33]  Upon receipt of this news, the parents filed for a due process hearing for reimbursement, on May 16th, 2006.[34]  Thereafter, on May 24th, 2006,  the District filed for a due process hearing for a determination that the reevaluation was appropriate.[35]  This was exactly ten weeks and two days after the parents' original request for an IEE at public expense pursuant to the Code.[36]

The Special Education Hearings Officer held hearings on June 23rd and June 30th, 2006 and concluded that the reevaluation was appropriate, denying reimbursement.[37]  The Hearing Officer found that the District's delay in filing for due process was harmless error, because they initiated meetings, communicated with the parents but the parents proceeded with the IEE regardless.  The Officer therefore found there was no harm was done to K.S.'s education by delaying the

---

[28] Plaintiff Exhibit 26.

[29] Plaintiff Exhibit 22.

[30] Id.

[31] Id.; see also Plaintiff Exhibit 21 (the parents requested that the District wait to conduct the IEP meeting until after the IEE was completed; however, the District responded with an email that failed to address the issue, and stated "let's plan to meet for an IEP meeting on Monday [April 10th, 2006]).

[32] Plaintiff Exhibit 28.

[33] NT 294.

[34] Plaintiff Exhibit 29.

[35] School District Exhibit 32.

[36] 34 C.F.R. §300.502(b).

[37] Record Exhibit 6, Findings and Report of the Due Process Hearings (the hearings were held by Hearings Officer Kenneth Rose).

hearing until after the IEE was complete.[38]

Because the Hearing Officer found no procedural violation by the District, he then examined the appropriateness of the reevaluation report. Finding that the methods for testing were "sound," and that the determination of a learning disability in math fluency had been made, the Hearing Officer concluded that there was sufficient information to form an IEP, and that the reevaluation report was appropriate according to the requirements under the IDEIA.[39] Therefore, because the report was appropriate, the Officer found the parents had no right to reimbursement under the Code.[40]

The parents appealed the Hearing Officer's determinations to the Special Education Appeals Panel, which affirmed the Officer's findings, but with a slightly different method of reasoning.[41] The panel used a four-part test to determine whether or not reimbursement was warranted, without citation to any precedent from which their methodology originated.[42] As did the Hearing Officer, the Panel afforded no import to the two months during which the District neither reimbursed the parents for the IEE nor initiated a due process hearing, as the Code of Federal Regulations requires.[43] Instead, the Panel focused on the amount of time between the receipt of the IEE and the time it took the District thereafter to initiate a due process hearing, finding that twenty-seven days was not "unnecessary delay."[44]

Finding no procedural violation by the District, the Panel went on to decide whether the evaluation report was appropriate.[45] In reviewing merely for an abuse of discretion by the Hearing Officer, the Panel found that the totality of

---

[38] Id. at 7-8.

[39] Id. at 8.

[40] 34 C.F.R. §300.502 (b)(3)(stating that where the evaluation is found appropriate at a due process hearing, the parents are not entitled to an IEE at public expense).

[41] Report Exhibit 2, Panel Decision at 8.

[42] Id. at 5.

[43] Id. at 6 (stating that there were only 27 days that elapsed between the District's receipt of the IEE and its filing for due process, beginning the time line on April 27th rather than on March 13th when the parents originally requested an IEE at public expense); see also 34 C.F.R. §300.502 (2) (stating that "If a parent requests an independent educational evaluation at public expense, the public agency must, without unnecessary delay, either (i) file a due process complaint to request a hearing to show that its evaluation is appropriate; or (ii) ensure that an independent educational evaluation is provided at public expense").

[44] Panel Decision at 7.

[45] Id.

the record did not lead it to such a conclusion.[46] Despite the stark disparities
between the findings in the two professional evaluations,[47] the Panel found that
the Hearing Officer's conclusion that there was sufficient evidence to form an IEP
from the reevaluation alone was reasonable.  Therefore, the Panel deferred to his
judgment.[48]  Lastly, the Panel found that, because the report was appropriate, they
need not review the IEE, and the parents' request for reimbursement was denied.[49]

This Court denied Plaintiffs' Motion for Summary Judgment on September 30, 2007,

finding that the District did not act with "unnecessary delay" in issuing the NOREP, and that the

reevaluation report, however scant, sufficiently complied with the IDEIA's requirements.[50]

Plaintiffs timely filed this Motion for Reconsideration on October 9, 2007.[51]

## II. DISCUSSION

Plaintiffs argue six bases for reconsideration of this Court's denial of Plaintiff's Motion

for Summary Judgment: (1) the Court made an error of fact regarding the date upon which

plaintiffs received their IEE report; (2) the Court made an error of fact regarding the date upon

which Plaintiffs were made aware their IEE payment request was denied; (3) the Court made an

error of law regarding Plaintiffs' right to estoppel by silence, and therefore Plaintiffs are entitled

to relief upon equitable grounds; (4) the Court made an error of law in interpreting the applicable

federal statute concerning the adequacy of the IEP; (5) the Court made an error of law in

concluding that defendant complied with the requirements of the IDEIA concerning the adequacy

---

[46] Id at 8.

[47] Referring to the IEE report by Dr. Kay and the re-evaluation report of March 6,2006.

[48] Panel Decision at 8.

[49] Id.

[50] Mem. Op. and Order at 23.

[51] Doc. No. 14.

of the reevaluation report; and (6) the Court made an error of law in interpreting the "resolution

session" portion of the IDEIA.

      Motions for reconsideration are governed by Local Rule of Civil Procedure 7.1(g) and are

considered motions to "alter or amend" judgment under Federal Rule of Civil Procedure 59 (e).

The standard for granting a motion for reconsideration is stringent, and can only be satisfied in

one of three ways: 1) when there is new evidence not previously available; 2) where there has

been an intervening change in controlling law; or 3) where there has been a clear error of law that

needs to be corrected to prevent manifest injustice.[52]  The purpose of motions for reconsideration

is to correct "manifest errors of law or fact or to present newly discovered evidence."[53]   The

Court cannot grant a motion merely because a party is dissatisfied with the Court's ruling, nor

can it consider repetitive arguments that were previously asserted and considered.[54]   Because

Plaintiffs do not present new evidence nor a change in the controlling federal law, this Court

examines Plaintiffs' bases for reconsideration for errors in law resulting in manifest injustice.

### A. Receipt of the IEE

      Plaintiffs argue that the Court made an error of fact regarding the timing of their receipt

of the IEE.[55]  They assert the Court incorrectly stated the date of receipt was April 6, 2006, when

in fact they received a completed copy of the report on April 26, 2006, and that this error

impacted the Court's conclusion that the parents had the opportunity to effectively participate in

---

[52] <u>Max's Seafood Café v. Quinteros</u>, 176 F.3d 669, 677 (3d Cir. 1999); <u>Brunson v. Arbitron</u>, 246 F. Supp. 2d 446, 446-47 (E.D. Pa. 2003).

[53] <u>Harsco Corp. v. Zlotnicki</u>, 779 F.2d 906, 909 (3d Cir. 1985).

[54] <u>U.S. v. Fiorelli</u>, 337 F.3d 282, 287-88 (3d Cir. 2003).

[55] Pls.' Mot. for Recons. at 1.

the Independent Educational Program ("IEP") meeting on April 10, 2006.  When the IEE was finally complete, the parents claim they attempted to meet with the District to develop the IEP, but they were unable to do so because the school psychologist could not attend.[56]  Plaintiffs therefore argue that they were denied the opportunity to participate in the IEP, which must be considered by the Court for reimbursement of IEE expenses.

We review this alleged error of fact for its effect on the Court's ruling as a matter of law, and whether any such effect resulted in manifest injustice.[57]  Initially, the Court notes that the facts in the record present a conflict as to when and what the parents knew about the IEE.  While K.S.'s father testified that he did not receive the IEE until April 26, 2006, he also testified that he reviewed Dr. Kay's IEE findings on April 6, 2006.[58]  Thus, the Court concluded that the parents had substantial knowledge of the findings of the IEE report at the time of the April 10, 2006 IEP meeting, to the extent that they were able to participate effectively in forming K.S.'s IEP.[59]  In the Court's discussion of whether the parents had received the "completed IEE report" by April 6, 2006, this factual statement was technically incorrect.[60]   However, the impact upon the Court's reasoning remains the same.  The Court was concerned with the parents' ability to effectively participate in the IEP meeting, and they were able to do so with the test results received by K.S's father on April 6, 2006, regardless of whether they had the completed report in

---

[56] Id. at 3.

[57] Max's Seafood, 176 F.3d at 677.

[58] NT at 340.

[59] Mem. Op. and Order at 22.

[60] Id.

hand.  The Court found that there was no adverse impact on K.S.'s right to a Free Appropriate

Public Education ("FAPE") as a result of any technical violation.[61]  This conclusion is unaltered

by the Court's factual error.  Therefore, Plaintiffs are not entitled to reconsideration on this basis.

## B. The NOREP

Plaintiffs argue that the Court made an error of fact when it stated that the parents were

informed verbally that the District would reject their request for reimbursement on April 10,

2006,[62] asserting that they were not so informed until May 3, 2006.[63]   Again, this alleged error of

fact must be considered in light of its effect on any resulting error of law to establish a basis for

reconsideration.  Regardless of whether the Court made an error of fact, or whether, as Plaintiffs

assert, the Court relied upon hearsay evidence in doing so, the Court's conclusions of law are

unaffected.  The additional time it took for the District to issue a NOREP in writing does not

become "unnecessary delay," and is not effected by the parents' subjective beliefs.[64]   Thus, this

alleged error of fact cannot be a basis for reconsideration.[65]

## C. Equitable Grounds for Relief

Plaintiffs assert that the Court erred in its determination that the parents are not entitled to

reimbursement for the IEE unless they show their child's right to FAPE was negatively impacted.

---

[61] Id. at 23.

[62] Mem. Op. and Order at 17.

[63]  Pls.'s Mot. for Recons. at 3 (citing Spec. Ed. Op. 1760 at 5).

[64] Id. at 23.

[65] Max's Seafood, 176 F.3d at 677.

Rather, Plaintiffs argue that, regardless of the effect on K.S.'s FAPE, they are entitled to equitable relief based on "estoppel by silence."[66]  Plaintiffs argue that they relied upon the District's silence as confirmation that their IEE would be reimbursed.  As a matter of equity, Plaintiffs argue, they should be entitled to reimbursement for the failure to provide notice of the District's refusal to pay for the IEE.[67]

This asserted basis for reconsideration reargues Plaintiffs' previous contention that they are entitled to reimbursement under the IDEIA.[68]  As the Third Circuit has held, rearguments are not appropriate grounds for reconsideration.[69]  Separately, this argument is without merit, as this Court has considered whether the District's actions amount to tacit agreement, and found that they did not.[70]  Reconsideration is not appropriate on these grounds.

### D. Appropriateness of the Reevaluation Report

Plaintiffs further argue that the Court misunderstands the IDEIA's requirements for an appropriate reevaluation report.[71]  They take issue with the Court's finding that the IDEIA is designed to consider only physical and mental impairments that may affect specific learning disabilities, rather than "'sufficiently comprehensive to identify all of the child's special education and related services needs, whether or not commonly linked to the disability category

---

[66] Pls.'s Mot. for Recons. at 1.

[67] Id.

[68] Pls.' Mot. for Summ. J. at 6.

[69] Fiorelli, 337 F.3d at 287-88.

[70] Mem. Op. and Order at 23.

[71] Pls.'s Mot. for Recons. at 2.

in which the child has been classified.'"[72] Specifically, Plaintiffs contend that the Court erroneously determined that the evaluation report was appropriate despite its lack of accommodation for K.S.'s blood disorder.[73]

The Court reviews this claim for an error of law and for any resultant miscarriage of justice. The IDEIA sets out the requirements for an appropriate evaluation at 20 U.S.C. § 1414(a) and § 1414(b). These sections specify numerous requirements for the administration and evaluation and reevaluation reports. One such requirement is that the "child is assessed in all areas of suspected disability."[74] The Court found that the District complied with these requirements, and did in fact note K.S.'s blood disorder, showing that the District's IEP accommodated for it in 2001.[75] Again, in the 2005 reevaluation report, the District noted K.S.'s blood disorder, on the front page of the report.[76] However, the IEP must only reflect that which the District finds relevant to special educational services, which the District did not so find with respect to K.S.[77]

 Moreover, Plaintiffs have not shown a resulting miscarriage of justice from the Court's interpretation of K.S.'s physical impairments and the reevaluation report. The Court stated that

---

[72] Id. (citing 34 C.F.R. 300.304(b)(6)).

[73] Id.

[74] 20 U.S.C. § 1414(b)(3)(b).

[75] School Dist. Ex. 1 ("Evaluation Report") at 2 ("Dr. Coughlin recommended that [K.S.]'s activities be restricted to exclude activity that might place him at risk for bleeding or bruising. On 10-8-01, a meeting was held at Roslyn school, and appropriate accommodations were added to [K.S.]'s IEP.")

[76] School Dist. Ex. 2 ("Reevaluation Report") at 1.

[77] Id. at 7-8 (finding that K.S. was unmotivated, vulnerable, and intermittently unfocused, but that he nonetheless scored within the average range on nearly all tests performed).

"[w]hile the Court sympathizes with any troubles K.S. may experience as a result of his blood disorder, this objection does not impact the Court's findings based on the law relating to the IDEIA."[78]  Thus, not only was this physical disorder found irrelevant in the reevaluation report and by the Court, the argument was already exhausted and rejected in the Court's September 30, 2007 Order.  Therefore, this argument must fail, as it is an insufficient basis for reconsideration.[79]

### E.  Failure to Provide For a Specific Learning Disability

Plaintiffs assert that the Court erred in finding that the reevaluation report was appropriate and based on sound methodology.[80]  They argue that the Court erred in its conclusion based on the lack of data provided to support the identification of any specific learning disability.

This argument is a reiteration of the comprehensive argument Plaintiffs posed in their Motion for Summary Judgment.[81]  It was considered and rejected by the Court.[82]  A motion for reconsideration is not the proper avenue for relief unless the Plaintiffs can show that this conclusion was a clear error of law resulting in manifest injustice.[83]  Plaintiffs have failed to show that the IDEIA requires a presentation of data, or that it requires a detailed description of a

---

[78] Mem. Op. and Order at 29.

[79] Fiorelli, 337 F.3d at 287-88.

[80] Pls.' Mot. for Recons. at 2.

[81] Pls.' Mot. for Sum. J. at 5.

[82] Mem. Op. and Order at 25.

[83] Max's Seafood, 176 F.3d at 677.

specific learning disability.[84]  The reevaluation report used reliable data, was conducted by qualified professionals and produced reliable results.  The Court is not required to conduct a more thorough inquiry, given the adequate record it reviewed.  There is no error of law and no resulting injustice to Plaintiffs here.

### F. The Resolution Session

Plaintiffs contend that the Court erred in determining that a resolution session is promptly required after a parent makes a "complaint" to the School District about a reevaluation report. Rather, they argue that the word "complaint" in the IDEIA only refers to a due process complaint for purposes of triggering a resolution session.[85]  Again, the Court reviews this objection for a clear error of law resulting in manifest injustice.  Plaintiffs fail to present support for their assertion that a complaint to the school district cannot be considered a "complaint" under the statute.[86]  There can be no error of law without a presentation of contradictory law or precedent that interprets this aspect of the statute.  Therefore, Plaintiffs are not entitled to reconsideration of

---

[84] See 20 U.S.C. § 1414 (c)(1)(B) (stating that the IEP team must review existing evaluation data and on the basis of that review, and input from the parents, identify what additional data, if any, are needed to determine whether the child is a child with a disability); see also 20 U.S.C. § 1414 (b)(4) (stating that upon completion of the assessments and evaluations, the determination of whether a child is a child with a disability and the educational needs of the child must be made by a team of qualified professionals).

[85] Pls.' Mot. for Recons. at 5.

[86] The Court concluded that the relevant time period for determining whether the District acted without "unnecessary delay" was six weeks, because the resolution session provided by the IDEIA triggered the computation of the time delay.  However, Plaintiffs now argue that the resolution session provision did not apply to their "complaint" to the School District, as the Court found.  Plaintiffs clearly attempt to prolong the District's response time by claiming that the Court should have examined a longer period of "inaction" by the District in failing to issue a NOREP.  They again provide no law, however, to support their interpretation of the IDEIA, that a "complaint" can only be a formal due process complaint.  This Court finds that a reasonable interpretation of the statute would require the District to act immediately to form a resolution session, before a due process hearing was even initiated.  This provision serves to benefit parents in a similar position as Plaintiffs, and more importantly, a child's right to a FAPE in as expeditious a manner as possible.  The parents' argument on the issue is contrived without support in law.

the Court's interpretation of the law on the issue.[87]

## CONCLUSION

_____The Court finds no new evidence, nor change in controlling law, nor any error of law committed that resulted in manifest injustice to the Plaintiffs claims.  Therefore, Plaintiffs' Motion for Reconsideration is denied.

---

[87] Fiorelli, 337 F.3d at 287-88.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

—————————————————————————— :
**L.S. and C.S., as Parents and Nearest Friends of** :
**K.S.,** :
  :
       **Plaintiffs,** :
   **vs.** :    **CIVIL NO. 06-5172**
  :
**ABINGTON SCHOOL DISTRICT,** :
  :
       **Defendant.** :
—————————————————————————— :

## <u>ORDER</u>

       **AND NOW**, this 9th day of April, 2008, upon consideration of Plaintiffs' Motion

for Reconsideration [Doc. No. 14], Defendant's Response [Doc. No. 15], and this Court's

Memorandum Opinion and Order of September 30, 2007 [Doc. No. 13], it is hereby,

       **ORDERED** that Plaintiffs' Motion is **DENIED**.

       This case remains **CLOSED**.


                           **BY THE COURT:**
                           **/s/ Cynthia M. Rufe**

                           _____
                           **CYNTHIA M. RUFE, J.**